**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DESMOND GODSON,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**CITY OF PHILADELPHIA, JORDAN HARRIS, and JEROME L. WATSON**<br>*Defendants.* | **CIVIL ACTION**<br><br>**NO. 24-6461** |

Baylson, J.                                                      **March 10, 2025**

### MEMORANDUM RE: DEFENDANTS' MOTION TO DISMISS

Plaintiff, Desmond Godson, brings claims against the City of Philadelphia and Philadelphia Detention Center Corrections Officers, Jordan Harris and Jerome Watson. Presently before this Court is Defendants' Motion to Dismiss. For the reasons detailed below, the Motion is granted in part and denied in part.

### I.    FACTUAL BACKGROUND

Plaintiff, Desmond Godson, was attacked by Corrections Officers Harris and Watson on July 21, 2022, while in pretrial detention at Philadelphia Detention Center. Compl. at ⁋ 8, ECF 3.[1] Godson was detained in the mental health unit of the PHSW infirmary. Id. Harris and Watson entered Godson's cell in search of a spoon. Id. at ⁋ 9. Upon entry to Godson's cell, without warning or justification, Harris and Watson attacked Godson. Id. Harris and Watson punched, stomped, screamed and cursed at, slammed, and kicked Godson. Id. Sergeant Hill, a third Corrections Officer, eventually ordered Harris and Watson to exit Godson's cell. Id. at ⁋ 12. Godson was taken to the Detention Center's infirmary where he was evaluated by Dr. Elizabeth Bradley. Id. at ⁋ 13. On Dr. Bradley's advice, Godson was transported to Jefferson

---

[1] The Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff. Doe v. Univ. of Sci., 961 F.3d 203, 208 (3d Cir. 2020).

Torresdale Hospital ("Jefferson") where he was diagnosed with serious injuries including a broken arm that necessitated surgical placement of two plates, facial trauma, permanent nerve damage, and injuries to his head and face. Id. at ¶ 16. During his stay at Jefferson, Godson contracted MRSA. Id. Godson's MRSA diagnosis was not properly treated by Defendants, an additional surgery was required to remove the MRSA infection located underneath the surgically placed plates in Godson's arm. Id. at ¶¶ 17, 18. The injuries inflicted by Harris and Watson rendered Godson "sick, sore, lame, prostrate, disabled, disfigured, and have forced him to suffer great mental anguish; embarrassment, humiliation, loss of enjoyment of life's pleasures and physical and mental injuries, pain, and suffering." Id. at ¶ 27.

## II.    **PROCEDURAL HISTORY**

Godson filed his Complaint on November 14, 2024, in the Court of Common Pleas of Philadelphia County. On December 4, 2024, Defendants removed to federal Court. ECF 1. On December 16, 2024, Defendants filed this Motion to Dismiss. ECF 4. This Court granted Godson's Stipulated Motion for an Extension, ECF 6, and Godson filed his Response to the Motion to Dismiss ("Response") on January 31, 2025. ECF 7. Defendants did not file a Reply.

The Complaint brings eleven claims, the first ten of which are against both the City and the Corrections Officers and the last of which is a Monell claim against only the City. The claims are as follows:

1) Intentional Infliction of Emotional Distress (IIED) and Negligent Infliction of Emotional Distress (NIIED) (Count I);

2) Negligence and Gross Negligence (Count II);

3) Excessive Force and other Due Process Violations under 42 U.S.C. § 1983 (Count III);

4) Withholding Appropriate and Timely Medical Care and Covering up Violations under 42 U.S.C. § 1983 (Count IV);

5) Conspiracy to Use Excessive Force and Violate Equal Protection Rights, and to Cover up Violations under 42 U.S.C. § 1983 (Count V);

6) Cruel and Unusual Punishment/Excessive Force/Monell Claims under 42 U.S.C. § 1983 (Count VI);

7) Unreasonable Search and Seizure and Equal Protection Violations under 42 U.S.C. § 1983 (Count VII);

8) Conspiracy to Commit Equal Protection Violations under 42 U.S.C. § 1985 (Count VIII);

9) Assault and Battery (Count IX);

10) Failure to Intervene/Bystander Liability under 42 U.S.C. § 1983 (Count X);

11) Monell Claims for Excessive Force and Failure to Train under 42 U.S.C. § 1983 (Count XI).

In his Response, Godson seeks leave to amend Counts IV, VI, and VII, withdrawals Count I, as to NIED, and Count II, and withdrawals Counts III, IV, V, VII, VIII, and X against only the City.  The below chart summarizes the claims still at issue.

| Count | Against Individual Defendants | Against City |
|---|---|---|
| Count I – IIED | ☒ | ☒ |
| Count III – Excessive Force (§ 1983) | ☒ | |
| Count V – Conspiracy to use Excessive Force (§ 1983) | ☒ | |
| Count VIII – Conspiracy to Commit Equal Protection Violations (§ 1985) | ☒ | |
| Count IX – Assault and Battery | ☒ | ☒ |
| Count X – Failure to Intervene/Bystander Liability | ☒ | |
| Count XI – Monell Claim | | ☒ |

## III.    **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim to relief that is plausible on

its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678–79 (2009) (citing <u>Twombly</u>, 550 U.S. at 555), and so it will not suffice if it is "devoid of further factual enhancement," <u>Iqbal</u>, 556 U.S. at 678 (citation omitted).  Thus, in considering a motion to dismiss, the court accepts all factual allegations as true and views them in a light most favorable to the plaintiff, <u>Doe v. Univ. of Sci.</u>, 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume that [the plaintiff] can prove facts that it has not alleged[,]" <u>Twombly</u>, 550 U.S. at 563 n.8 (quoting <u>Associated Gen. Contractors of Cal., Inc. v. Carpenters</u>, 459 U.S. 519, 526 (1983)).

IV.    **DISCUSSION**

  **A.  IIED (Count I)**

In Count I Godson brings an IIED claim against Harris, Watson, and the City.  Compl. at ⁋⁋ 32-37.  Defendants argue that Godson's IIED claim fails because (1) the claims are barred by the Political Subdivision Tort Claims Act (PSTCA), and (2) the Complaint lacks sufficient facts.

The Complaint details the significant physical injuries that Harris and Watson inflicted upon Godson and Godson's resultant "psychological and emotional distress, embarrassment, anxiety and humiliation."  Compl. ⁋ 26.  The Complaint further alleges that the City's policies or practices, including deliberate indifference as to the rights of inmates, condoning the use of excessive force and cruel and unusual treatment against inmates, and failing to adequately train corrections officers were underlying causes of Godson's injuries.  Compl. at ⁋⁋ 20-23.

To establish an IIED claim under Pennsylvania law a plaintiff must establish that the defendant's conduct: "(1) was intentional or reckless; (2) was extreme and outrageous; (3) actually caused the distress; and (4) caused distress that was severe."  <u>Regan v. Twp. of Lower Merion</u>, 36 F.Supp.2d 245, 251 (E.D. Pa. 1999) (Reed).  A plaintiff must also "allege physical

4

manifestations of the emotional distress." <u>Simms v. Houser</u>, 2022 WL 4585838, at *8 (M.D. Pa. Sep. 29, 2022). "At the pleading stage, the court is to decide as an initial matter whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute outrageousness as a matter of law." <u>Martin-McFarlane v. City of Phila.</u>, 299 F.Supp.3d 659, 671 (E.D. Pa. 2017) (Rufe). Courts have construed "outrageousness" narrowly as conduct that goes "beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." <u>Fugarino v. Univ. Servs.</u>, 123 F.Supp.2d 838, 844 (E.D. Pa. 2000) (Joyner) (internal citations omitted).

### 1. Political Subdivision Tort Claims Act

Defendants argue that Plaintiff's IIED claim against Harris and Watson and the City are barred by the PSTCA.

#### i. Harris and Watson

Godson sues Harris and Watson in both their individual and official capacities. Godson's IIED claim may proceed under both theories.

The PSTCA bars tort claims brought "on account of any injury to a person or property caused by an act of [a] local agency or an employee thereof." 42 Pa.C.S.A. § 8541. As such, suits against government employees "in their official capacities [are] essentially [] suit[s] against" the local government and thus barred by the PSTCA. <u>Waites v. City of Phila.</u>, 2001 WL 484082, at *2 (E.D. Pa. Mar. 5, 2001) (Giles). However, the PTSCA does not prevent Godson from suing Harris and Watson in their individual capacities. <u>See Kinney v. Cnty. of Berks</u>, 2023 WL 3868379, at *16 (E.D. Pa. June 6, 2023) (Murphy).

Additionally, Section 8550 of the PSTCA provides an exception to the general rule of immunity for acts committed in an employee's official capacity where "the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful

misconduct." 42 Pa.C.S.A. § 8550.  As such, government employees themselves can be liable

for such acts.  See Gallashaw v. City of Phila., 774 F.Supp.2d 713, 719 (E.D. Pa. 2011) (Brody)

(internal citations omitted).  Godson's injuries were allegedly caused by the willful and malicious

actions of Harris and Watson, thus Harris and Watson are not afforded immunity under the

PSTCA.

   **ii. City**

  Godson's IIED claim is also brought against the City.  However, "the City cannot be

liable for an injury caused by the criminal, fraudulent, malicious, or willful/intentional

misconduct of the employee."  Gallashaw, 774 F.Supp.2d at 719 (internal citations omitted).

Accordingly, the City is not liable for any IIED claim.  The Motion to Dismiss is granted as to

the IIED claim against the City, with prejudice.

  **2. Sufficiency of the Pleadings**

  As the PSTCA does not bar the IIED claim against Harris and Watson, this Court turns to

whether the Complaint pleads sufficient facts to establish the claim.

  In cases where plaintiffs' IIED claims have been dismissed based on the sufficiency of

their pleadings, plaintiffs have failed to identify the nature of their injuries, establish physical

harm, or identify the involvement of specific defendants.  See Simms, 2022 WL 4585838, at *8

(plaintiff failed to identify his injuries or the personal involvement of defendants); Gomez v.

Markley, 2011 WL 112886, at *1 (W.D. Pa. Jan. 13, 2011) ("a plaintiff must establish physical

injury or harm ... at the very least, existence of the alleged emotional distress must be supported

by competent medical evidence.").

  In contrast, Godson's Complaint specifies the actions taken by Harris and Watson and the

resultant physical and emotional damages Godson sustained.  The Complaint details the physical

attack that Harris and Watson inflicted upon Godson.  Notably, courts have previously found

allegations of physical assault to be sufficient to plead a claim for IIED.[2]  The Complaint also

pleads sufficient facts to meet each element of an IIED claim.  It pleads facts that speak to the

intentional and outrageous nature of Harris and Watson's actions ("[w]ithout warning and for no

justified reason" Harris and Watson assaulted Godson, causing him serious physical injuries.

Compl. at ⁋ 10).  The Complaint also pleads facts that allege that Harris and Watson's attacked

caused Godson's injuries of which Godson continues to suffer the aftereffects (Harris and

Watson's attack caused Godson to "sustain[] multiple serious injuries, some or all of which may

be permanent." Id. at ⁋ 26.)  The Motion to Dismiss is denied as to the IIED claim against Harris

and Watson.

### B. Excessive Force and other DP Violations (Count III)

In Count III Godson brings an excessive force claim under 42 U.S.C. § 1983 in violation

of the Fourth, Fifth, Eight, and/or Fourteenth Amendments against Harris and Watson.[3]  Compl.

at ⁋⁋ 43, 44.  Defendants argue that Godson fails to sufficiently plead Count III as he only asserts

a general § 1983 claim that relies on assumptions and conclusions.  MTD at 8-9.

As a preliminary matter, pre-trial detainees should bring excessive force claims under the

due process clause of the Fourteenth Amendment.[4]  See Jacobs v. Cumberland Cnty., 8 F.4th 187,

---

[2] See Doe v. Moravian College, 2020 WL 6485099, at *3 (E.D. Pa. Nov. 4, 2020) (Gallagher) (plaintiff's allegation
that defendant raped her, pulled her hair, and kicked her was sufficient to plead a claim for IIED); Fuhrman v. Quill
Corp., 2010 WL 411698, at *8 (M.D. Pa. Jan. 27, 2010) (dismissing plaintiff's IIED claim against corporate
employer where plaintiff did not plead that employer engaged in retaliation or treated the harassment complaint
outrageously but noting that allegations of sexual and physical assault are "likely sufficient to support an IIED
claim" against attacker); Shultz v. Carlisle Police Dep't, 706 F.Supp.2d 613, 628 (M.D. Pa. 2010) (denying summary
judgment as to plaintiff's IIED claim where officers "used extreme force to subdue a subject from physical distress
and not resisting officers' physical control."); Ehly v. City of Phila., 2004 WL 2644392, at *4 (E.D. Pa. Nov. 17,
2004) (Joyner) (denying summary judgment as to plaintiff's IIED claim where officer "restrained the handcuffed
adolescent against a police car as his head was being slammed down" by another officer.).
[3] The Complaint brings Count III under 42 U.S.C. § 1983 in violation of the Fourth, Fifth, Eight, and/or Fourteenth
Amendments.  Compl. at ⁋ 43, 44.  In his Response, Godson posits that liability for this claim stems from the
Fourteenth Amendment.  Resp. at 11.
[4] The Court only analyzes Godson's excessive force claim under the Fourteenth Amendment.  To the extent that
Godson brings an excessive force claim under the Fourth, Fifth, or Eighth Amendments those claims are dismissed.
The Fourth Amendment only applies to claims that excessive force was used in "the course of an arrest,

193-94 (3d Cir. 2021).  A substantive due process violation occurs when the force used "shocks the conscience."  Fagan v. City of Vineland, 22 F.3d 1296, 1303 (3d Cir. 1994).  There are four elements to the "shocks the conscience" test: "a) Was there a pedagogical justification for the use of force?; b) Was the force utilized excessive to meet the legitimate objective in this situation?; c) Was the force applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?; and d) Was there a serious injury?"  Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist., 272 F.3d 168, 173 (3d Cir. 2001).

Godson sufficiently states an excessive force claim for violation of his Fourteenth Amendment due process rights against Harris and Watson.  "Use of even minor physical force against a person in a police officer's custody without provocation is actionable under section 1983 even if the injuries are not severe or permanent."  Bieros v. Nicola, 860 F.Supp. 226, 232 (E.D. Pa. 1994) (Joyner).  There was no pedagogical justification, legitimate objective, or effort to maintain or restore discipline for the use of force.  Compl. at ⁋ 10.  Rather, Harris and Watson allegedly attacked Godson "[w]ithout warning and for no justified reason."  Id.  As a result of Harris and Watson's malicious actions, Godson allegedly suffered serious injuries.  Id. at ⁋ 10, 56.  This attack "shocks the conscious" and is sufficient to plead a Fourteenth Amendment excessive force claim.  The Motion to Dismiss is denied as to the excessive force claim against Harris and Watson.

---

investigatory stop, or other seizure[,]" at the time of the incident Godson was a pretrial detainee.  See Graham v. Connor, 490 US. 386, 395 (1989) (internal citations omitted).  The Fifth Amendment only applies to federal officials and there are no federal defendants in this case.  See Bergdoll v. City of York, 515 Fed. App'x 165, 170 (3d Cir. 2013) (non-precedential).  While excessive force claims can be brought under the Eighth Amendment's prohibition against cruel and unusual punishment, the Eighth Amendment only applies once there has been a conviction and sentence.  Id. at 383 n.6; see also Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015).

### C.  § 1983 Conspiracy (Count V)

In Count V Godson brings a § 1983 conspiracy "to use excessive force and violate equal protections rights, and to cover up violations" claim in violation of the Fourth, Fifth, Eighth, and/or Fourteenth Amendments against Harris and Watson.  Compl. at ¶¶ 60-64.  Defendants argue that Godson fails to sufficiently plead Count V, because the Complaint only contains conclusory language.  MTD at 6-7.  The Court only considers Godson's claim under the Fourteenth Amendment.[5]

To succeed on a § 1983 conspiracy claim a plaintiff must establish an underlying § 1983 violation, that is "that the object of the conspiracy was the deprivation of a federally protected right." Jutrowski v. Twp. of Riverdale, 904 F.d 280, 295 (3d Cir. 2018) (internal citations omitted).  Once an underlying § 1983 violation has been established, a plaintiff must "provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." Id.  Godson sufficiently pled a Fourteenth Amendment excessive force claim.  As such, the Court turns to whether the Complaint pleads facts supporting the elements of agreement and concerted action.

### 1.  Conspiracy to Use Excessive Force

 "A conspiracy to deprive a plaintiff of his right to be free from excessive force can be shown on the basis that beatings were committed by officers 'acting together.'"  Gass v. Mathews, 2018 WL 6249710, at *4 (E.D. Pa. Nov. 28, 2018) (Beetlestone) (internal citations omitted); see also U.S. v. Rorke, 1991 WL 165275, at *6 (E.D. Pa. Aug. 22, 1991) (Kelly) ("The fact that these beatings were committed by the policemen acting together provided a sufficient

---

[5] To the extent that Godson brings 1983 conspiracy claims for violation of the Fourth, Fifth, or Eighth Amendments, those claims are dismissed because Godson has not plead any underlying Fourth, Fifth, or Eighth Amendment violation.

basis for the jury to conclude that the policemen were conspiring, or acting in concert, to deprive Smith, Jr. of his constitutional right to be free from excessive force.").  Harris and Watson attacked Godson together, battering, punching, stomping, screaming, cursing, kicking, and slamming him against the cell wall and floor.  Compl. at ⁋ 10.  That Harris and Watson allegedly attacked Godson together is enough to state a § 1983 conspiracy to use excessive force claim. The Motion to Dismiss is denied as to the § 1983 conspiracy to use excessive force claim.

### 2.  Conspiracy to Deprive Plaintiff of Access to the Courts

Godson also raises, for the first time in his Response, a § 1983 conspiracy claim to deprive him of the right to access the courts.  Resp. at 13.  The Complaint states that Harris and Watson "fabricat[ed] writeups and reports" and "falsif[ied] written and oral statements to conceal their unlawful acts and falsely lay blame on Plaintiff."  Compl. at ⁋⁋ 40(q), 62.  Notwithstanding that this cause of action was not identified in the Complaint, Godson did not plead sufficient facts to support that Harris and Watson conspired to deny him access to the courts.

The Complaint only pleads sufficient facts to allege that Harris and Watson conspired to cover up the use of excessive force.  It specifically states that Harris and Watson fabricated reports and falsified statements to conceal their actions.  Compl. at ⁋⁋ 40(q), 62.  However, "concealing a constitutional violation, including use of excessive force, does not amount to a separate constitutional violation unless the victim of the concealment was deprived of his right of access to the courts."  Swiggett v. Upper Merion Twp., 2008 WL 4916039, at *3 (E.D. Pa. Nov. 17, 2008) (O'Neill).  In Swiggett, the Complaint alleged that officers filed a falsified police report to cover up their use of excessive force.  Id.  The Court held that allegations of a falsified police report where not sufficient to plead a violation of the right to access the courts because the complaint failed to allege that the concealment actually impeded plaintiff's ability to access the courts.  Id. at 4.  Godson's Complaint, like the one in Swiggett, fails to assert that the

10

concealment impeded his ability to access the courts.  To the extent that a § 1983 conspiracy to deny access to the courts claim was asserted, the Motion to Dismiss is granted, and the claim is dismissed without prejudice.

### D. § 1985 Conspiracy (Count VIII)

In Count VIII Godson brings a 42 U.S.C. § 1985 conspiracy to commit equal protection violations under the Fifth and Fourteenth Amendments claim against Harris and Watson.  Compl. at ¶¶ 78-81.  Defendants argue that Godson fails to sufficiently plead Count VIII, because the Complaint only contains conclusory language.  MTD at 7.  This Court only considers Godson's claim under the Fourteenth Amendment.[6]

Godson does not identify an applicable subsection of § 1985, but he likely brings his claim under § 1985(3) ("[d]epriving persons of rights or privileges").  The Supreme Court has articulated four elements that must be met to establish a § 1985(3) conspiracy claim: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States."  United Broth. of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29 (1983).  The Third Circuit has elaborated that "a plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious."  Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006).

---

[6] To the extent that Godson brings a § 1985 conspiracy claim under the Fifth Amendment that claim is dismissed as the Fifth Amendment only applies to federal officials and there are no federal defendants in this case.  See Bergdoll, 515 Fed. App'x at 170.

The Complaint only states that "[t]he actions and inactions taken against the Plaintiff occurred due to his race, African American."  Compl. at ⁋ 80.  Godson has pled an identifiable class based on race.  But Godson fails to plead with sufficient particularity that Harris and Watson's actions were motivated by racial animus.  To state a § 1985(3) conspiracy claim, Godson must show that Harris and Watson conspired against him because of his race.  Godson offers only a single conclusory statement, that the actions taken against him occurred due to his race.  As such, Defendants' Motion to Dismiss Godson's 42 U.S.C. § 1985(3) claim is granted, without prejudice.

### E.  Assault and Battery (Count IX)

In Count IX Godson brings state law assault and battery claims against Harris, Watson, and the City.[7]  Defendants argue that Godson fails to sufficiently plead Count IX, because the Complaint only contains conclusory language.  MTD at 9-10.

### 1.  The City

Defendants did not raise Pennsylvania's Political Subdivision Tort Claims Act (PSTCA) as a defense to Godson's assault or battery claims.  However, under the Act the City is not liable for an injury caused by the "criminal, fraudulent, malicious, or willful/intentional misconduct of the employee."  Gallashaw, 774 F.Supp.2d at 719 (internal citations omitted).  Additionally, the torts of assault and battery do not fall under one of the Act's enumerated exceptions for negligent acts.  See Deems v. Phillips, 2018 WL 6574184 at * 3 (E.D. Pa. Dec. 12, 2018) (Baylson).  As such, the Motion to Dismiss Count IX is granted as to the City, with prejudice.

---

[7] The Complaint brings Count IX against all Defendants.  The Response states both that Count IX is withdrawn as to the City and that a Count IX was sufficiently pled against the City.  As such, this Court reviews the merits of the assault and battery claims against the City.

### 2. Harris and Watson

As a preliminary matter, Harris and Watson are not shielded from immunity by the PSTCA on the assault and battery claims because Harris and Watson allegedly acted willfully and maliciously. Accordingly, this Court will turn to whether Godson's assault and battery claims were sufficiently pled.

Under Pennsylvania law, an "assault is an intentional attempt by force to do injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (internal citations omitted). The Pennsylvania Supreme Court has held that whether a law enforcement officer's conduct constitutes assault and battery depends on the reasonableness of the force used. Id. In other words, "unnecessary or excessive" force, as determined by the fact finder, may result in liability. Id.

Harris and Watson "used force on [Godson] by severely assaulting, battering, punching, stomping, screaming, cursing, slamming him against the cell wall and floor, and kicking him about the head and body, causing him serious injuries." Compl. at ¶¶ 10, 83. Harris and Watson caused Godson "to sustain a broken right arm that needed two plates and a broken ulnar bone, along with other severe and permanent injuries[,] . . . [and] was not reasonably related to any legitimate penological interest" but was instead "intended solely to physically and mentally injure [Godson], a pretrial detainee." Id. at ¶ 19.

Godson has sufficiently pled the elements of an assault and battery claim. The Complaint states that Harris and Watson: (1) entered Godson's cell to search for a spoon, and (2) without warning or justification intentionally battered, punched, stomped, slammed, and kicked Godson. In their Motion to Dismiss, Defendants proffered no reason to justify this use of force. As such, the Motion to Dismiss count IX as to Harris and Watson is denied.

13

**F.   Failure to Intervene/Bystander Liability (Count X)**

In Count X Godson brings a 42 U.S.C. § 1983 failure to intervene/bystander liability claim against Harris and Watson in violation of the Fourth, Fifth, and/or Fourteenth Amendments.  Compl. at ⁋⁋ 87-92.  Defendants argue that Godson fails to sufficiently plead Count X, because the Complaint only contains conclusory language.  MTD at 7-8.  This Court only considers Godson's claim under the Fourteenth Amendment.[8]

Godson's Complaint alleges that Harris and Watson were both "present at the unconstitutional use of . . . excessive force and assault and battery against the Plaintiff by the other Defendant, [] and had the time and opportunity to prevent and/or stop [the other] from committing all or part of the same, but they made no effort to do so."  Compl. at ⁋ 88.

A failure to intervene claim requires three elements be met: (1) plaintiff suffered an underlying constitutional violation; (2) defendant had a duty to intervene; and (3) defendant had a realistic and reasonable opportunity to intervene.  See Klein v. Madison, 374 F.Supp.3d 389, 419 (E.D. Pa. 2019) (Smith) (quoting Adams v. Officer Eric Selhorst, 449 F. App'x 198, 204 (3d Cir. 2011) (non-precedential)).  When the underlying constitutional violation at issue is an excessive force claim, as it is here, an "officer has a duty to take reasonable steps to protect a victim from another's use of excessive force, even if the excessive force is employed by a superior."  Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002).

Godson has sufficiently pled a failure to intervene claim against Harris and Watson in violation of the Fourteenth Amendment.  First, Godson has adequately pled an underlying constitutional violation.  That is, Harris and Watson violated Godson's Fourteenth Amendment

---

[8] As previously discussed, Godson was a pre-trial detainee at the time of the incident.  As such, the Fourth Amendment (conduct during the course of an arrest, investigatory stop, or other seizure) and Fifth Amendment (conduct by federal officials) are not applicable.

right to be free from the use of excessive force.  Second, as Corrections Officers, Harris and Watson had a duty to intervene.  In their Motion to Dismiss, Defendants do not argue that either Harris or Watson attempted to stop the use of force.  Third, Harris and Watson had a realistic and reasonable opportunity to intervene.  Both Harris and Watson were in Godson's cell, meaning that each was near the event, and thus had the opportunity to intervene.[9]  Harris and Watson's use of force only ended when Sergeant Hill ordered Harris and Watson to exit Godson's cell.  Compl. at ⁋ 12.  Sergeant Hill's ability to intervene to stop the use of excessive force supports the inference that Harris and Watson had a realistic and reasonable opportunity to intervene.  The Motion to Dismiss is denied as to Count X against Harris and Watson.

### G. <u>Monell</u> Claims (Count XI)

In Count XI Godson brings <u>Monell</u> Claims for Excessive Force and Failure to Train against City Defendant.  Compl. at ⁋⁋ 93-98.  Defendants argue that Godson fails to state a <u>Monell</u> Claim because the Complaint (1) only contains conclusory language, and (2) fails to identify a municipal policymaker.  MTD at 12-15.  Godson contends that the Complaint is (1) sufficiently specific to state a claim, and (2) not required to identify a responsible final decision maker.  Resp. at 17-18..

When a suit brought under § 1983 names a municipality as a defendant, the suit may not proceed under a theory of *respondeat superior*—that is, where the employer or principal is held liable for the wrongful acts of its employees.  Such a case must proceed under the theory of liability prescribed by the U.S. Supreme Court in <u>Monell</u>.  To establish a <u>Monell</u> claim against a municipality a plaintiff must show (1) a deprivation of a federal right, <u>City of Los Angeles v.</u>

---

[9] <u>See Klein</u>, 374 F.Supp.3d at 420 (denying summary judgment on Plaintiff's failure to intervene claim because the officers were "near both events and it is a disputed issue of material fact whether each officer had a reasonable opportunity to intervene.").

Heller, 475 U.S. 796, 699 (1986); (2) a relevant policy or custom attributable to the City, Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978); and (3) "a direct causal link" between the municipal action and the deprivation of the federal right, Bd. of Comm'rs of Bryan Cnty., v. Brown, 520 U.S. 397, 404 (1997). The municipality is liable when either the policy or custom facially violates the Constitution, or if not unconstitutional itself, is the "moving force" behind the constitutional violation. Thomas v. Cumberland Cnty., 749 F.3 217, 222 (3d Cir. 2014). As explained, Godson has adequately pled a constitutional violation for excessive force in violation of the Fourteenth Amendment.

The acts of an employee are considered the result of a municipal policy or custom where (1) "the appropriate officer or municipality promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy;" (2) "no rules have been announced as policy but federal law has been violated by an act of the policymaker itself;" or (3) the "policymaker has failed to act affirmatively at all, [though] the need to take some action to control the municipality's agents is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (internal citations omitted).

Thus, Godson may establish the City's liability by showing that his injuries were caused by (1) an unconstitutional policy or custom of the City, or (2) a failure or inadequacy by the City that reflects a deliberate or conscious choice. See Forrest v. Parry, 930 F.3d 93, 105 (3d Cir. 2019). While custom and failure to train claims are closely related, "the avenues remain distinct: a plaintiff alleging that a policy or custom led to his or her injuries must be referring to an unconstitutional policy or custom, and a plaintiff alleging failure-to-supervise, train, or discipline

16

must show that said failure amounts to deliberate indifference to the constitutional rights of those affected." Id.

### 1. Unconstitutional Custom

A "policy" is an official proclamation or edict of a municipality, whereas a "custom" is a practice that is "so permanent and well settled as to virtually constitute law." See Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Godson points to no official City policy. As such, the Court must determine whether the Complaint articulates facts sufficient to establish an unconstitutional custom.

A custom may be established by "evidence of knowledge and acquiescence." Id. "A plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). "This does not mean, however, that the responsible decisionmaker must be specifically identified by the plaintiff's evidence. Practices 'so permanent and well settled as to have the force of law [are] ascribable to municipal decisionmakers.'" Id. (quoting Anela v. City of Wildwood, 790 F.2d 1063, 1067 (3d Cir. 1986)). Thus, even if a custom "has not been formally approved by an appropriate decisionmaker" it "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Bryan Cnty., 520 U.S. at 404.

Defendants' contention that the Monell claim must be dismissed for failure to identify a municipal decisionmaker is incorrect. However, Defendants correctly argue that Godson's assertions of an unconstitutional custom are too conclusory to state a claim.

To adequately plead a Monell claim, predicated on an unconstitutional custom, Godson must "identify a custom or policy" of the City and "specify what exactly that custom or policy was," McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009), and then plead facts that

demonstrate a "direct causal link" between the City's custom and the "alleged constitutional deprivation," Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir. 2007).

The Complaint states that it was the City's policy, practice, and/or custom to (1) condone the use of unjustified and excessive force against inmates within the Philadelphia Prison System (Compl. at ¶¶ 21, 94); (2) condone cruel and unusual treatment of prisoners by Corrections Officers in violation of the Fourth, Fifth, Eighth, and/or Fourteenth Amendments (Id. at ¶ 23); and (3) maliciously prosecute prisoners to cover up constitutional violations and assaults and batteries committed by Corrections Officers' (Id. at ¶ 96).  The Complaint also states that it was the policy, practice, and/or custom of Corrections Officers to fail to stop unjustified and excessive force against inmates when used by other officers.  Id. at ¶¶ 21, 94.  Godson does not plead any facts relating to the stated customs, that is, the City's custom of condoning excessive force, cruel and unusual treatment, and malicious prosecution against prisoners.  Godson states only that the City "condones" these customs.  But Godson does not specify any underlying facts that affect Godson's claims of a policy or custom by the City that sanctioned this conduct.

These conclusory statements are insufficient to state a claim for § 1983 liability under Monell.  See Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a Monell claim).  In Ekwunife v. City of Phila., the plaintiff alleged that the District Attorney "created or condoned a policy [or] custom [that] signaled to his subordinates that it [was] okay to use fabricated evidence to initiate a criminal prosecution, and to withhold such evidence from the criminal defense" and "encouraged or condoned a policy, or custom or practice of using known false or fabricated evidence." 245 F.Supp.3d 660, 674-75 (E.D. Pa. 2017) (Robreno).  The Court held that these allegations "merely parrot[ed] the standard of liability" and were "insufficient" to

state a <u>Monell</u> claim.  <u>Id.</u>  Godson's assertion that the City condones excessive force, cruel and unusual treatment, and malicious prosecution against prisoners is even more vague and conclusory than that in <u>Ekwunife</u>.  As the Third Circuit has clearly articulated the pleading requirements to support a <u>Monell</u> claim, Count XI as it is predicated on an unconstitutional policy or custom, is dismissed with prejudice.

### 2. Deliberate Indifference

A <u>Monell</u> claim predicated on a failure to train must establish that the municipality's failure was a "deliberate" or "conscious choice."  <u>City of Canton Ohio v. Harris</u>, 489 U.S. 378, 388 (1989).  To demonstrate deliberate indifference, Godson must show that "(1) municipal policymakers kn[ew] that employees w[ould] confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  <u>See Forrest</u>, 930 F.3d at 106 (citing <u>Carter v. City of Phila.</u>, 181 F.3d 339, 357 (3d Cir. 1999)).  Additionally, plaintiffs "must identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind occurred."  <u>Colburn v. Upper Darby Twp.</u>, 946 F.2d 1017, 1030 (3d Cir. 1991).

Godson states that it was the City's policy, practice, and/or custom to improperly train Corrections Officers.  Compl. at ⁋⁋ 22, 95.  Godson does not identify any specific training that the City failed to provide, let alone how such a training would have prevented his injuries.  Count XI, as it is predicated on a failure to train, is likewise dismissed with prejudice as the Third Circuit has clearly defined the pleading requirements to support a <u>Monell</u> claim.

V.    <u>**CONCLUSION**</u>

For the foregoing reasons, the Motion to Dismiss is granted in part and denied in part. The Motion is DENIED as to Count I (IIED against Harris and Watson), Count III (excessive force against Harris and Watson), Count V (§ 1983 conspiracy to use excessive force against Harris and Watson), Count IX (assault and battery against Harris and Watson), and Count X (failure to intervene against Harris and Watson).  The Motion is GRANTED without prejudice as to Count V (§ 1983 conspiracy to deny access to the courts against Harris and Watson) and Count VIII (§ 1985 conspiracy against Harris and Watson).  The Motion is GRANTED with prejudice as to Count I (IIED against the City), Count IX (assault and battery against the City), and Count XI (Monell claim against the City).  The below chart summarizes the state of Plaintiff's claims.

| Count | Against Individual Defendants | Against City |
|---|---|---|
| Count I – IIED | MTD denied. | MTD granted with prejudice. |
| Count I – NIED | Withdrawn without prejudice. | Withdrawn without prejudice. |
| Count II –Negligence & Gross Negligence | Withdrawn without prejudice. | Withdrawn without prejudice. |
| Count III – Excessive Force (§ 1983) | MTD denied. | Withdrawn without prejudice. |
| Count IV – Withholding Medical Care & Covering up § 1983 Violations | Leave to Amend granted. Dismissed without prejudice. | Withdrawn without prejudice. |
| Count V – Conspiracy to use Excessive Force (§ 1983) | MTD denied. | Withdrawn without prejudice. |
| Count V – Conspiracy to Deny Access to Court (§ 1983) | MTD granted without prejudice. | Withdrawn without prejudice. |

| | | |
|---|---|---|
| Count VI – Cruel/Unusual Punishment & Monell Claim[10] | Leave to Amend granted. Dismissed without prejudice. | Leave to Amend granted. Dismissed without prejudice. |
| Count VII – Unreasonable Search & Seizure | Leave to Amend granted. Dismissed without prejudice. | Withdrawn without prejudice. |
| Count VIII – Conspiracy to Commit Equal Protection Violations (§ 1985) | MTD granted without prejudice. | Withdrawn without prejudice. |
| Count IX – Assault and Battery | MTD denied. | MTD granted with prejudice. |
| Count X – Failure to Intervene/Bystander Liability | MTD denied. | Withdrawn without prejudice. |
| Count XI – Monell Claim | n/a | MTD dismissed with prejudice. |

---

[10] Plaintiff is granted leave to replead Count VI as "Monell claims regarding Defendant City of Philadelphia's customs and policies of deliberate indifference to inmate's rights to sanitary prison conditions and appropriate medical care." Resp. at 17.