**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DESMOND GODSON,**<br>*Plaintiff,*<br>**v.**<br><br>**CITY OF PHILADELPHIA, *et al.*,**<br>*Defendants.* | **CIVIL ACTION NO. 24-6461** |

**MEMORANDUM RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**BAYLSON, J.** **August 12, 2026**

## I. INTRODUCTION

Plaintiff Desmond Godson ("Plaintiff") brought this action against the City of Philadelphia, Jordan Harris, and Jerome Watson (collectively, "Defendants") alleging violations of his civil rights under 42 U.S.C. § 1983, § 1985, and Pennsylvania state law. ECF 21. Defendants have filed a Motion for Summary Judgment. ECF 63. For the following reasons, the Court will **DISMISS** Count I (excessive force), Count II (bystander liability), Count V (conspiracy to use excessive force), Count VI (unreasonable search and seizure), Count VII (conspiracy to deprive access to courts), Count VIII (conspiracy to deprive equal protection), and Count IX (denial of medical treatment) without prejudice due to Plaintiff's failure to exhaust administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e). The Court will also **GRANT** summary judgment as to Count IV (intentional infliction of emotional distress) because Plaintiff cannot establish the claim. The Court will **DISMISS** Count III (assault and battery) without prejudice, so that it may be refiled in state court.

## II. FACTUAL BACKGROUND

The July 21, 2022 incident between Plaintiff and Correctional Officers Harris and Watson is an area of dispute between the parties. Plaintiff alleges he was attacked by Defendants Harris

and Watson while in pretrial detention at the Philadelphia Detention Center. ECF 21 ("Am. Compl.") ¶¶ 7, 8. Plaintiff alleges that Defendants conducted an unauthorized search of his cell for a spoon as pretext to enter Plaintiff's cell to attack him. Id. ¶¶ 8, 9. Plaintiff was then escorted by Defendants Harris and Watson and/or other Correctional Officers to the infirmary where Dr. Elizabeth Bradley determined Plaintiff needed to be transported to seek additional medical care at Jefferson Torresdale Hospital. Id. ¶¶ 12, 13. Plaintiff alleges to have suffered serious injuries including a broken right arm that necessitated surgical placement of two plates, permanent nerve damage, and injuries to his head and face. Id. ¶ 16. While convalescing from his arm surgery, Godson contracted MRSA, which Defendants allegedly failed to properly treat, and required a second surgery to remove the infection. Id. ¶¶ 16, 18, 19.

Defendants allege that Plaintiff was instructed to stand against the wall while his cell was searched for a plastic spoon. ECF 62, ("DSUMF") ¶¶ 14, 16. Defendants allege that Plaintiff spat and swung at Defendants, and they brought him to the floor. Id. ¶¶ 17–18. Plaintiff was then taken to medical, allegedly without any outward injuries and did not complain of pain in his right arm. Id. ¶ 23.

## III. PROCEDURAL HISTORY

Plaintiff originally filed the Complaint in this case on November 14, 2024. ECF 1. The Court granted in part and denied in part Defendants' first Motion to Dismiss. ECF 4, 9. Following Plaintiff's Motion for Reconsideration, ECF 10, the Court granted Plaintiff leave to replead all Monell claims identified in the Complaint. ECF 11. Prior to the Court's ruling on the Motion for Reconsideration, Plaintiff filed a First Amended Complaint, ECF 15, that Defendants moved to dismiss on April 17, 2025, ECF 17. Upon granting the Motion for Reconsideration, the Court denied Defendants' April 17, 2025 Motion to Dismiss as moot. ECF 20. On May 8, 2025, after

the Court granted leave, Plaintiff filed a Second Amended Complaint against Defendants. Am. Compl. Again, Defendants filed a Motion to Dismiss, ECF 22, which the Court denied. ECF 29. Defendants replied to Plaintiff's Second Amendment Complaint with multiple affirmative defenses, including the failure to exhaust all administrative remedies available. ECF 33.

On January 23, 2026, Defendants filed a Motion for Summary Judgment on Plaintiff's Second Amended Complaint along with a Statement Undisputed Material of Facts. ECF 62, ECF 63 ("Mot."). Plaintiff filed a Response in Opposition on February 27, 2026. ECF 64 ("Opp."). Defendants filed a Reply Brief on March 6, 2026. ECF 65 ("Rep."). On April 29, 2026, the Court ordered the parties' file supplemental briefing accompanied by relevant exhibits on the threshold issue of whether Plaintiff exhausted his administrative remedies. ECF 71. In this Order, the Court notified the parties that it intended to act as a factfinder in resolving the exhaustion issue. Id. Plaintiff and Defendants both filed supplemental briefs to address the issue. ECF 72 ("Def. Supp."); ECF 75 ("Pl. Supp."). Defendants replied to Plaintiff's supplemental brief. ECF 76.

## IV. PARTIES' CONTENTIONS

Defendants assert that Plaintiff has failed to exhaust all administrative remedies as required by the PLRA before commencing this action. See Def. Supp. at 1–2. Defendants argue that Plaintiff did not file a grievance regarding the incident within the Philadelphia Prison System ("PPS") and/or did not properly follow the formal prison grievance system process. Id. at 2. Defendants further argue that even if Plaintiff filed a grievance informally, Plaintiff still failed to exhaust because Plaintiff did not make any attempt to appeal his grievances. Id. at 3.

Plaintiff responds that Defendants have not provided evidence that Plaintiff was given the Philadelphia Department of Prisons ("PDP") Inmate Handbook that explains the formal grievance process. Opp. at 13. Plaintiff further contends that he did file a written grievance, but that it was

discarded by Defendants and threats were made against Plaintiff. Pl. Supp. at 2. Plaintiff also argues that he grieved the events informally as evidenced by investigative reports of the incident. Id. at 4.

## V. LEGAL STANDARD

The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion mandate is a "centerpiece" of the statute. Woodford v. Ngo, 548 U.S. 81, 84 (2006). The exhaustion requirement of § 1997e(a) is not satisfied simply "whenever there is no further process available to the inmate within the grievance system. . . ." Spruill v. Gillis, 372 F.3d 218, 227–28 (3d Cir. 2004). The PLRA requires that an inmate "avail[ ] himself of every process at every turn." Id. A plaintiff's "[f]ailure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant." Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

The rules of exhaustion are not determined by the PRLA but by the rules of the prison grievance system itself. Jones v. Bock, 549 U.S. 199, 200 (2007). The grievance procedures of the PDP are the applicable standard. ECF 63-15, ("Inmate Grievance Procedures"). The policy provides that upon admission, prisoners are given the Inmate Handbook, which details the entire grievance process. Id. at 4. To file a grievance, an inmate places a grievance form in a grievance box and retains the bottom copy as his/her receipt of filing. Id. at 6. The form should be completed within ten days of the grievable event. Id. at 5. The policy provides that "[i]f there are no forms available, a grievance written out on a plain sheet of paper will be accepted if all the required information is present." Id. at 4. An informal grievance is "a grievance communicated by an

inmate through face-to-face communication or similar communication." Id. at 1. The policy states that an inmate who has communicated a grievance informally that remains unresolved must fill out a grievance form attesting that the informal process has occurred. Id. at 6. If an inmate is unsatisfied with the Warden's resolution of a grievance, the inmate can appeal the decision within five days of receipt to the Commissioner. Id. at 7. If an inmate believes that he/she is being denied access to the grievance process, the inmate may forward his/her grievance directly to the Commissioner. Id. at 6.

## VI. DISCUSSION

### A. Federal Law Claims

The Court will first address whether Plaintiff exhausted his administrative remedies as required by the PLRA before bringing the federal law claims in this suit. The PLRA's breadth includes constitutional claims and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). All of Plaintiff's federal law claims pertain to his time in pretrial detention, so Plaintiff is beholden to the exhaustion requirement for each of his federal claims. Am. Compl.

#### i. Plaintiff Fails to Show That He Followed PDP Grievance Procedure.

Plaintiff has not brought forth evidence that he properly grieved the events giving rise to this lawsuit. The Philadelphia Prison System (PPS) record of grievances filed by Plaintiff does not contain a grievance relating to the events of July 21, 2022. ECF 63-4 ("Pl. Grievance Record"). At his deposition, Plaintiff testified under oath that he filed two grievances relating to the incident, one relating to the conduct of the Correctional Officers and one relating to his unmet medical needs. ECF 63-11 ("Pl. Dep. Tr.") 21:7–13. Plaintiff further testified that he gave copies of these

two grievances to his attorney. Id. at 23:8–9. The two copies were not produced in response to discovery requests from Defendants. ECF 63-8; ECF 72-4. Plaintiff wrote a sworn statement attesting to the completeness of his response to discovery. ECF 72-5. The Court has received no evidence to indicate that Plaintiff utilized the formal grievance process for this incident.

Plaintiff also fails to provide evidence that he grieved the events informally. Plaintiff contends that even if a formal grievance is not present in the system, "[a] more formal grievance was not required as there was notice, both actual and constructive" due to the existence of various misconduct, investigative, and medical reports regarding the incident. Pl. Supp. at 4. Plaintiff argues that these reports show that he "much more substantially than 'informally' and much more than face-to-face communications." Id. However, participation in an investigation is not a substitute for an available grievance process. Chaney v. Bednard, No. CV 19–0005, 2020 WL 7864202, at *7 (W.D. Pa. Dec. 31, 2020) (citing Ross v. Blake, 578 U.S. 632, 641 (2016) (rejecting a "special circumstances" exception to the PLRA's exhaustion requirement that would have allowed suit to proceed on the theory that an internal investigation took the place of the grievance process). There is no evidence in the record to indicate that Plaintiff properly followed the informal grievance procedures of the PDP.

**ii. Plaintiff Has Not Shown Remedies Were Unavailable.**

Exhaustion is required only for "available" administrative remedies. Woodford, 548 U.S. at 93. Only in three circumstances are remedies deemed "unavailable": (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or

intimidation." Rinaldi v. United States, 904 F.3d 257, 266–67 (3d Cir. 2018). Once the defendant has established that the inmate failed to resort to administrative remedies, the inmate must show that such remedies were unavailable to him. Id. at 268.

Plaintiff has not shown that administrative remedies were unavailable to him. Plaintiff testified that he received threats that his grievances would be thrown in the trash. Pl. Dep. Tr. 19:1–6. Threats of this nature does not rise to the level of "machination, misrepresentation, or intimidation." To show intimidation, (1) the threat must be sufficiently serious to deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) the threat deterred this particular inmate. Rinaldi, 904 F.3d at 269. However, Plaintiff was not deterred from participating in the grievance process as he testified to filing two grievances—one based on the conduct of Correctional Officers Harris and Watson and one for not receiving wound care after the incident. Pl. Dep. Tr. 21:22–24, 22:1–6, 15–21.

In Garcia, the court rejected the plaintiff's generalized and self-serving deposition testimony in which the plaintiff stated that he requested grievance forms "all the time" but his requests were denied. Garcia v. PrimeCare Med., Inc., No. CV 08-3589, 2012 WL 3704800, at *6 (E.D. Pa. Aug. 28, 2012) (Pratter, J.). Here, Plaintiff testified that he filed two grievances related to the July 21, 2022 incident and gave copies of each to his attorney. Pl. Dep. Tr. 23:8–9. The copies have never been produced in discovery, nor has an explanation been provided for their absence. ECF 63-8; ECF 72-4; ECF 72-5. Thus, the Court does not credit Plaintiff's unsupported deposition testimony that his grievances were discarded by prison staff.

Further, Plaintiff did not report on his suspicion that he was being barred from the grievance process, nor did he attempt to follow up on or appeal his grievances. The Policy states that "if an inmate believes he/she is being denied access to the grievance process. . . the inmate may forward

their grievance directly to the Commissioner." Inmate Grievance Procedures at 6. Plaintiff fails to explain why he did not forward the copies of his grievances to the Commissioner.

Plaintiff's contention that, after filing two grievances related to the July 21, 2022 incident, he was subsequently denied further access to the grievance system is irrelevant. Plaintiff testified that after he filed two grievances, the Deputy Commissioner told him he was not allowed access to further grievance forms or paper on which to write his grievances. Pl. Dep. Tr. 19:7–13, 22:22–24, 23:1–14, 36:16–24, 37:1–5. According to Plaintiff's testimony, any denial of grievance forms and paper occurred after he had already filed two grievances related to the incident, meaning that Plaintiff had access to the grievance process at the time of the incident. Id. at 22:17–21.

Plaintiff's argument that he temporarily lacked access to the Inmate Handbook also does not show unavailability. According to PDP policy, all inmates are provided with a copy of the Inmate Handbook upon arrival. Inmate Grievance Procedures at 4. In his deposition, Plaintiff testified that he was not given an Inmate Handbook at intake. Pl. Dep. Tr. 29:17–18. However, Plaintiff also testified that he did receive a copy of the Inmate Handbook before the July 21, 2022 incident, meaning he had instructions on the grievance procedure at the time of the incident. Id. at 29:19–22. Further, Plaintiff has successfully filed grievances in the past, demonstrating his knowledge of the appropriate procedure to use a grievance form. Pl. Grievance Record; Small v. Camden Cnty., 728 F.3d 265, 272 (3d Cir. 2013) (concluding administrative remedies were available to an inmate who claimed he did not receive a handbook but properly filed his first grievance and had access to the prison library).

In short, Plaintiff has failed to show that he properly followed the PDP grievance procedures before pursuing action in court or that the grievance process was unavailable to him.

### B. State Law Claims

Plaintiff concedes that he cannot demonstrate his intentional infliction of emotional distress ("IIED") claim. Opp. at 17. Thus, the Court will proceed to evaluating the merits of Plaintiff's assault and battery claim.

A claim for assault and battery under Pennsylvania law turns on the reasonableness of the force used under the circumstances. Assault is "an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Cohen v. Lit Brothers, 166 Pa. Super. 206, 209 (1950). Corrections officers and police officers may use necessary force in the performance of their duties. See Regassa v. Brininger, No. 20-2642, 2021 WL 4738820 at *1 (3d Cir. Oct. 12, 2021). The reasonableness of the force used determines whether an officer's conduct constitutes assault and battery. Renk v. City of Pittsburgh, 537 Pa. 68, 76 (1994). Under the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S. § 8550, the statutory immunities otherwise available to local government employees do not apply where the employee's conduct is determined to constitute, among other things, willful misconduct. See Morris v. Musser, 84 Pa. Cmwlth. 170, 173, (1984).

There remain disputes of fact as to whether Defendants' actions in the July 21, 2022 incident constituted reasonably necessary force or willful misconduct. Plaintiff alleges that Defendants Harris and Watson assaulted him unprovoked and broke his arm. Pl. Dep. Tr. 40:23–24, 41:1–8. Defendants Harris and Watson allege that Plaintiff initiated the altercation by swinging and spitting at them. DSUMF ¶ 17. Defendants deny breaking Plaintiff's arm and hypothesize that the injury could have occurred in the time between when they left the cell and Plaintiff was taken medical. Def. Watson Dep. Tr. 21:13–19. Thus, the court cannot determine

as a matter of law whether Defendants' use of force was necessary and reasonable under the circumstances.

However, the Court will dismiss Plaintiff's claim for assault and battery without prejudice due to the dismissal of Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim after dismissing all claims over which it has original subject matter jurisdiction because considerations of judicial economy, convenience, and fairness to the parties do not provide an affirmative justification to do so. 28 U.S.C § 1367(c)(3); Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).

## VII. CONCLUSION

In sum, the Court will **DISMISS** Counts I, II, V, VI, VII, VIII, and IX without prejudice for failure to exhaust administrative remedies as required by the PLRA. The Court will **GRANT** summary judgment for Defendants on Count IV (IIED). The Court will **DISMISS** Count III (assault and battery) without prejudice, so that it may be refiled in state court.

\\adu.dcn\paed\phl-data\judge_baylson\civil 24\24-6461 godson v city of phila\24-6461 memo re def. mot. summ. j..docx